**STATE, Plaintiff-Appellee, v HESS, Defendant-Appellant.**

Ohio Appeals, Second District,.Franklin County.

No. 3983. Decided October 20, 1947.

Ralph J. Bartlett, Prosecuting Attorney, Vincent Martin, and William C. Bryant, Asst. Prosecuting Attorneys, Columbus, for plaintiff-appellee.

Hon. Carrington T. Marshall, Columbus, and Clarence M. Addison, Columbus, for defendant-appellant.

## OPINION

By HORNBECK, J.

This is an appeal from a judgment of conviction and sentence of the defendant on an indictment charging her with

"On the 29th of July, 1946, operating a trailer camp in Clinton Township, Franklin County, Ohio, in violation of an order and regulation of the Franklin County District Board of Health, to wit, Regulation No. 3, duly adopted, promulgated and published by the said Board of Health and effective on and after May 15, 1946; in this, to wit: That the said Flora Louise Hess on said date, in said township and county, did then and there operate the said trailer camp without having obtained a permit therefor from the said Board of Health."

Twenty-seven errors are assigned, one of which is the failure of the trial judge to give 19 special charges.

We first consider this case in one of its simpler aspects, namely, the essentials of proof, assuming that the Franklin County District Board of Health, which we hereinbefore refer to as the District Board, had authority to promulgate Regulation 3.

Independent of the formal requisites of proof, which were properly charged by the trial judge, the material and decisive elements of the offense set out are: (1) That the defendant operated a trailer camp, as defined in Regulation 3; and (2) That she had no permit authorizing such operation. The reasonableness of the Regulation and the questions of its constitutionality, in all respects, were for the determination of the trial judge as a matter of law and were resolved in favor of the State.

Of the two foregoing material elements of the offense there is no doubt, upon the record, that the defendant at the time alleged in the indictment was operating a trailer camp, which is defined in Regulation No. 3 to include all locations and places of abode of two or more cabins or trailers, and in the State Sanitary Code as three or more cabins or trailers, and that she had no permit of any kind either from the District Board or the State Health Board.

We are met at the outset with the claim that there is no provision in Regulation 3 of the District Board defining a permit, of what it consists, or what it authorizes. We must at all times keep in mind that the charge here is predicated on a violation of a regulation promulgated by the District Board and not any statutory law, or regulation or order of the State Board of Health.

Analyzing the provisions of Regulation 3, the first paragraph defines what constitutes a trailer camp.

The second paragraph requires that an application for permit must be made in writing to the Franklin County District Board of Health, Columbus, Ohio. Thus, right early in the

Regulation it becomes manifest that a permit to do something was in contemplation of the framers of the Regulation. The succeeding paragraphs 3 to 13, inclusive, define requirements to be observed by the operator of a trailer camp, area which must be made available for such camp and specific provisions as to sanitary requirements. Nothing in any of these paragraphs refers directly, or inferentially, to a permit.

Paragraph 14 provides:

"Whenever the foregoing requirements are satisfactorily met, owner of the camp may be authorized to erect a standard sign or marker to indicate that the camp has been investigated and approved by the District Health Department. No sign shall be erected or maintained without written authorization from the District Health Department. Such authorization may be revoked for cause at any time."

Paragraph 15:

"An inspection fee of five dollars for each five units or fraction thereof shall accompany each application for camp permit. Such permit shall be renewed annually and approved as provided for original permit."

Then follows:

"Whoever violates any provision of this regulation shall be prosecuted under provisions of §4414 GC. This regulation will become effective May 15, 1946."

Manifestly paragraph 15, like paragraph 2, of Regulation 3, relates to some permit which it is contemplated is to be issued by the Board. One reading the Regulation is under considerable compulsion to find some subject matter therein which will relate paragraphs 2 and 15 to a permit provided to be issued. There is then left one paragraph only of the Regulation in which, if at all, provision for, and definition of, a permit can be found and this is No. 14. If in paragraph 14 in lieu of the word "authorized" we insert the language "issued a permit" and further on insert "such" before "written" and change "authorization" to read "permit" and still later in the last sentence again change the word "authorization" to "permit", the paragraph will read as follows:

"Whenever the foregoing requirements are satisfactorily met, owner of the camp may be issued a **permit** to erect a standard sign or marker to indicate that the camp has been investigated and approved by the District Health Department. No sign shall be erected or maintained without such written permit from the District Health Department. Such **permit** may be revoked for cause at any time."

Dr. Herbert L. Mitchell, Secretary of the Health Board, gave paragraph 14 this construction and, reading Section 3 alone without any other aid to construction, it might be so interpreted. It was our first impression that it should be so read. However, if we so read the paragraph, our difficulty is none the less for the reason that if the "permit", to be issued by the Board, is defined in the language of paragraph 14, it purports to authorize the operator of the camp, upon compliance with the Regulation, to erect a standard sign or marker indicating that the camp has been inspected and approved. That part of paragraph 15, relating to a violation of any provision of this Regulation, would then raise the question, what provision of paragraph 14 has the defendant violated. The record is silent whether or not she had erected any sign at the trailer camp and she is not charged with illegally placing a sign. If paragraph 14 defines "permit", then there is an entire failure of proof of any violation by the defendant of that which would be authorized to be done if a permit had been issued to her.

Upon mature consideration, we have reluctantly come to the conclusion that the framer of Regulation 3 has, inadvertently, no doubt, omitted entirely therefrom subject matter which is essential to define what a permit, as therein contemplated, is, and if issued, what it authorizes the permittee to do.

In the Sanitary Code issued by the State Department of Health, pursuant to §§1235, 1236 GC, which by the terms of the latter section of the Code "shall apply to and be effective in all portions of the State", a permit, as therein contemplated, is defined. Regulation 233 of this Code, in so far as germane reads,

"No person * * * shall establish, maintain or use a camp for any of the purposes enumerated in Regulation 232 until written notification, describing the location and purpose of the camp, has been given to the Health Commissioner of the

District in which the camp is located, and a written permit or approval for the establishment, maintenance or use of such camp has been issued by the District Health Commissioner." (Emphasis ours.)

Patently, the written approval or permit which it is here contemplated the Health Commissioner of the District shall issue is for either the establishment, maintenance or use of a trailer camp, and such permit is what the defendant was required to have to give any meaning to the language of the indictment. Later on in the Sanitary Code under the head "Sanitation of Camps'", wherein Regulation 233 is found, also appears Regulation 235 which is in substantially the same language as is employed in paragraph 14 of Regulation 3 of the Health Board. Thus, it is apparent that the authorization to place an approved sign is something entirely separate and different from the authorization which is contemplated by the issuance of the written permit. Regulation 233 is consistent with that which in the very nature of things would be found in a written permit to the operator of a trailer camp, namely, authority to maintain and use the camp.

If we adopt the contention of the State that paragraph 14 defines "permit" in Regulation No. 3, then it means in this regulation something other than, and different from, the same word as carried in the Sanitary Code promulgated by the State Board, and that which the same Board, viz., the District Board issues, upon approved applications, varies under the respective regulations. Such construction would be contrary to the spirit as well as the letter of the Sanitary Code. If it is given the interpretation which we adopt, then the State Code and Regulation 2 are consistent. We, therefore, come to the conclusion that there is no provision whatever in Regulation 3 of the County Board providing for the permit which is mentioned in paragraphs 2 and 15 of the Regulation.

If any authorities are needed to support our construction of the Regulation, dealing as it does with requirements the violation of which is made an offense under the criminal law, we would refer to **State v Meyers, 56 Oh St 340,** and the first syllabus thereof:

"A statute defining a crime or offense cannot be extended, by construction, to persons or things not within its descriptive terms, though they appear to be within the reason and spirit of the statute."

**134**

Supporting this pronouncement Judge Williams who wrote the opinion, at page 350 quotes from Chief Justice Marshall in the case of the United States v Wiltberger, 5 Wheat., 76-96:

"To determine that a case is within the intention of a statute, its language must authorize us to say so. If would be dangerous, indeed, to carry the principle, that a case which is within the reason or mischief of a statute, is within its provisions, so far as to punish a crime not enumerated in the statute, because it is of equal atrocity or of kindred character, with those which are enumerated."

**The opinion further** announced a well established principle:

"Persons cannot be made subject to such statute by **implication.** Only those transactions are included in them which are within both their spirit and letter; and all doubts in the interpretation of such statutes are to be resolved in favor of the accused."

Citing Bishop on Statutory Crimes, Section 194; **Shultz v Cambridge,** 38 Oh St 659; State v Bovee, 6 O. N. P. (N. S.) 337.

The indictment, grounded on Regulation 3 of the District Board, states, and the proof supports, no offense against the defendant, which determination requires us to reverse the judgment of conviction and to enter a judgment of dismissal of the charge.

Were it not for the statute, §12248 GC which requires us to pass upon all errors assigned, and the cases holding it mandatory, **Rheinstrom v Steiner,** 69 Oh St 452; **Mestetzko v E. H. Motor Co.,** 119 Oh St 475, we would be content to conclude our decision at this point.

The State in presenting its cause to the jury apparently adopted the burden of establishing a violation by the defendant of some one of the sanitary provisions of Regulation 3 of the County Board.

In the opening statement for the prosecution it was claimed that the evidence would disclose violations of Regulation 3 in several particulars, among them, that there were no streets in the trailer camp separating the various units, no laundry facilities of any kind or character, no shower or bath accomodations, inadequate provision for disposal of garbage, as well as proof of the operation of the camp without a permit.

If it be conceded that Regulation 3 was a valid enactment and that it required the defendant to secure a permit to

operate her camp, then upon such showing, and that she had secured no permit, it was defensive to produce proof that the defendant had observed all of the valid requirements of Regulation 3. The record indicates that the trial judge by his rulings apparently took this view of the matter. However, if the State assumed to offer more testimony than required to make its case, it could not be objectionable on error.

As the trial progressed, upon the giving of defendant's special charge No. 19, carried in the general charge, the jury was told that, if it appeared that the defendant made a reasonable effort to get material for the purpose of installation of showers in the camp, it should acquit her. This charge implies that the court was of the opinion that there was but one requirement of Regulation 3, which the proof did not establish the defendant had observed, namely, the installation of showers as required by the order of the State Board.

Some weeks prior to the return of the indictment herein, namely, June 6, 1946, the County Board, in response to an application of the defendant for a permit, replied:

"This department in conjunction with the State Health Department made an investigation, and a copy of the regulation controlling trailer camps in Franklin County was left with you.

You are hereby given thirty days to meet the State regulations. If this is not done we will take legal action to close this camp."

The action which was taken by the charge in the indictment does not accord with the last paragraph of this letter, and the indictment makes no reference to any violation of State regulations by the defendant. However, the State proffered testimony which was admitted, of the report of Mr. Clarence M. Robinson, District Engineer of the State Health Department, wherein minimum requirements to make defendant's camp acceptable, four in number, were set out. It reasonably appears that the defendant complied with three of the four requirements. The fourth required the establishment of shower bath facilities.

It was the claim of defendant that she made every reasonable effort to conform to this last requirement, but was unable to do so because of inability to secure equipment. To support her position she introduced the testimony of a plumber whom she had employed to install showers at the camp, who testified in substance that he was unable, after diligent effort, to secure

such equipment. The defendant testified that she wrote to Sears, Roebuck Company, Chicago, Illinois, and that it was unable to provide the material needed. She further said that she had other letter or letters to like effect. To meet this testimony the only evidence offered by the State was that of Mr. Howard Reynolds, Sanitary Officer of the District Board, which was elicited upon cross-examination. These questions were put by Mr. Addison and answers thereto given, p. 6:

"Q. Mr. Reynolds, do you know whether or not facilities for shower baths were obtainable prior to this date for new installation in trailer camps and after May 20?
A. Several other camps did get them.
Q. Where?
A. The Bobby Jones Trailer Camp out on East Main Street, the Greenlawn Trailer Camp, Thomas Dorsey Camp upon North High Street, and the Hilliards Tourist Camp which is just this side of Canal Winchester, and the Finner Trailer Camp out on Emmett Road. That is all I can recall without records."

Thereafter the defendant and her plumber testified that at least as to two of the camps named by Mr. Reynolds, there had been no shower equipment installed during the period fixed in his cross-examination. This was not rebutted. The Court charged the jury that if defendant honestly attempted to comply with the order as to showers, and through no fault of her own and because of matters beyond her control could not comply therewith, it should acquit her. In view of the uncertainty as to the accuracy of Mr. Reynolds' testimony on the subject under consideration we have considerable difficulty in resolving this question in favor of the State. However, it was placed squarely before the jury which made determination on the factual issue against the defendant and following the rule by which we are bound, we should not reverse this judgment on the weight of the evidence, if the question were involved.

The testimony respecting the installation of the showers was admissible, not as it related to the observance of the order of the State Board, but to the requirement of paragraph 9 of Regulation 3 of the District Board, which provided:

"One shower is required for each sex for each fifteen units in camp."

In any event, whatever construction is eventually placed upon the meaning of the word "permit" in Regulation 3, the defendant was given the charge which she requested, which was indeed most favorable to her.

The defendant asserted that by reason of an O. P. A. regulation, and because of an order of the Common Pleas Court of Franklin County, the defendant could not evict her tenants and thereby discontinue the operation of her camp and should not be held to answer for illegal operation of the camp. We hold against the claim of the defendant as to both of these questions.

We are not ready to say that the O. P. A. regulation, prohibiting the eviction of tenants under conditions therein set forth, would be enforceable against a landlord who was illegally maintaining the places of abode wherein the tenants resided.

The petition in the Common Pleas Court and the order thereon granting an injunction against taking any action to defendant's notification to her tenants to leave the premises and restraining the Franklin County Board of Health from taking any further action to prevent defendant from conducting a so-called trailer camp, were proffered on behalf of the State and refused by the trial judge and are in the record, but neither is dated. Some testimony refers to the restraining order as having been issued in August, but inquiry by counsel fixes the effective date thereof as September 3, 1946. This order of September 3, 1946, could not affect the issue of the guilt of the defendant of operating a trailer camp without a permit on July 29, 1946.

It is asserted that the prosecution, if successful, would constitute a confiscation of defendant's property in violation of **Section 19, Article I of the Ohio Constitution** and of Section 1, Article XIV of the Constitution of the United States.

Manifestly, if the defendant was violating a regulation of the County Board duly promulgated and with which she was properly charged, it could not be said that there was any unconstitutional interference with the carrying on of a lawful business in a lawful manner.

It is further claimed that the regulation upon which the indictment is predicated is in violation of **Section 29, Article II, of the State Constitution** in that, by its terms, it precludes the uniform operation of a law of general nature.

**State, ex rel. Village of Cuyahoga Heights v Zangerle, 103 Oh St 566,** supports the constitutionality of §1261-16, et seq., GC, under which the District Health Board derives its authority to

enact the regulation here under consideration, as against the claim that they violated **Section 26, Article II,** of our Constitution. This decision, however, arose under a different state of facts than appears here where it may be conceded that the authorization to the District Health Board is not in derogation of the Constitution but it is urged that in the exercise of that power it exceeds the authority there conferred. §1235 GC provides:

"It shall be the duty of the Pulblic Health Council and it shall have the power:

(a) To make and amend sanitary regulations to be of general application throughout the State. Such sanitary regulations shall be known as the Sanitary Code;

(b) * * *

(c) * * *

(d) * * *

(e) * * *

(f) * * *"

**Sec. 1236 GC** provides, in part:

"* * * Every provision of the Sanitary Code shall apply to and be effective in all portions of the State."

Pursuant to this authorization a Sanitary Code was enacted in which regulations are adopted for the specific purpose of controlling sanitation of camps, and these regulations have been promulgated by the State Board, a copy of which is made a part of the Bill of Exceptions.

In an examination as to the one provision affecting the installation of showers, which, as this case was tried, was made the determinative issue, the Ohio Sanitary Code makes no mention of "showers" by name. Paragraph 9 of Regulation 3 of the District Board requires the installation of one shower for each sex for each 15 units in camp. There is a provision in the State Sanitary Code, Regulation 234 (c):

"The camp shall be provided with adequate and approved toilet facilities comprising water flushed plumbing equipment or properly located and constructed privies of approved design."

Regulation 3 provides, paragraph 8:

"Water flushed plumbing equipment must be installed for camps accommodating 25 or more people."

The Sanitary Code having been enacted by express statutory authority with the further mandatory provision that every provision thereof should be effective in all portions of the State, where specific as to requirement would, in our judgment, control against another or a different provision enacted by a District Board.

The general test as to the validity of an ordinance, under **Article II, Section 26** of our **Constitution** is whether the ordinance permits or licenses that which the statute forbids and prohibits, or vice versa. **Struthers v Sokol, 108 Oh St 263;** Guth v Heines, 29 N. P. (N. S.) 382. A municipal ordinance which prohibits performance of acts which are affirmatively authorized by the general law is usually regarded as contravening such general law. **City of Canton v Nist, 9 Oh St 439. In 28 O. Jur., 442,** is is said:

"An essential requirement of a valid ordinance or other measure is that the provisions thereof shall not conflict with any positive provision of the State or Federal Constitution, of the general law, or of the municipal charter, or infringe upon the spirit or be repugnant to the policy thereof."

Testing these two provisions of the respective regulations, the requirement in Regulation 3 as to showers is not in conflict with any specific provision of the Sanitary Code that the camp shall be provided with adequate and approved toilet facilities comprising water flushed plumbing equipment. But the District Health Board under its general power, §1261-42 GC, as a health measure, has the authority to promulgate paragraph 9 of said Regulation because there is no provision in the State Sanitary Code whatever on the subject.

There is conflict between the requirement of Regulation 3 as to water flushed plumbing in connection with the provision that there must be one toilet for each sex for each 10 units in the camp, and that provision in the Sanitary Code, which, in the alternative, will accept "properly located and constructed privies of approved design".

It is urged by the state that §1261-42 GC, authorizes the District Board to "make such orders and regulations as it

140

deems necessary * * *, for the public health, the prevention or restriction of disease, * * * and that the regulation here under consideration is a public health measure and may therefore be supported". If this section stood alone, we would be inclined to agree, but inasmuch as this is a general provision and paragraphs 2, et seq., of the Sanitary Code were made pursuant to a specific · provision of the statute, §1235 GC, which should be read in pari materia with §1261-42, the special provision would take precedence over the general.

If there is an issue whether or not the privies at the camp of defendant were equipped, as required by Regulation 3, it is our judgment that the provision of the Regulation must yield to the permissive language of the Sanitary Code on the subject.

The defense asserts that there is no penal provision in the Sanitary Code and no authority to enforce the orders of the District Board by criminal process. We find no penalty fixed in the Sanitary Code for violation of the germane regulations but Regulation 3 provides that violations thereof shall be prosecuted under §4414 GC, which defines the penalty for violation of any of the provisions of the chapter which relates to the organization, powers and regulations of the Boards of Health of Municipalities.

**Sec. 4416 GC:**
"Prosecutions under this chapter (that is the chapter in which §4414 GC also appears) shall be instituted before a justice of the peace within the county, or justices of the peace, mayor or police judge in a municipality where the offense was committed or the offending person resides. * * *"

Query: To what extent would this specific provision of the statute as to the place and manner of the trial affect the prosecution here? The question is not raised, but it is urged that there is no penal statute available to the District Board of Health.

**Sec. 1261-30 GC reads:**

"The District Board of Health shall exercise all the powers and perform all the duties now conferred and imposed by law · upon the Board of Health of a municipality, and all such powers, duties, procedure and penalties for violation of the sanitary regulations of a board of Health shall be construed to have been transferred to the District Board of Health by this act. * * *"

This authorization, in our judgment, is broad enough to support the adoption by the Board of the provision of §4414 GC, and to enable it to base its prosecution of defendant thereon.

It is claimed by the defendant that inasmuch as she had tendered a check with her application to the Board for a permit in which check it was written on the face thereof that it was for a permit, and the Board had cashed it, the Board could not be heard to say that a permit should not have been granted.

Section 15 of Regulation 3 provides that an inspection fee of five dollars for each five units or fraction thereof shall accompany each application for camp permit. The money which is paid to the Board under this paragraph is not for the permit, but an inspection fee, and the defendant tendering the check under provisions of Regulation No. 3 may not maintain her position that it should be applied for a purpose other than that contemplated in the Regulation.

The defendant tendered 20 instructions to the trial judge before argument and requested that they be given as a part of the general charge, either specifically or that the substance thereof be included in the general charge. The Court gave one only, number 19, which referred to the effort of the defendant to secure material with which to install showers in the camp, and the failure to give the other nineteen is assigned as error.

Without further discussion, we hold that the charges were not required to be given, and as briefly as possible indicate the reason for our ruling.

No. 1. The exercise of the power granted to the District Board was in that Board under §1261-42 GC subject only to the prohibition against the enactment of provisions in the section in conflict with the State Sanitary Code.

No. 2. This charge would require an acquittal upon the observance by the defendant of one provision only of the State Sanitary Code contrary to the District Regulation and precluded the jury making determination that any valid provision of Regulation 3 had been violated.

No. 3. If it be granted that the State Sanitary Code does not require shower baths in trailer camps, this alone did not preclude the District Board from incorporating such provision in its Regulation if within contemplation of §1261-42 GC.

No. 4. The Regulation enacted under the general powers of the District Health Board, where not in conflict with the Sanitary Code may not be said to be a regulation or law of a general nature.

No. 5. The subject matter of this charge, in our judgment, was not a question for the jury to determine. 53 Am. Jur. 143.

Nos. 6 and 7. The same as No. 5.

No. 8. We have sufficiently discussed in our general opinion.

No. 9. Would require the jury to give effect to the injunction granted by the Common Pleas Court against the defendant.

No. 10. Not properly for the cognizance of the jury.

No. 11. Relates to the effect of the injunction of the Common Pleas Court which we have heretofore discussed in the general opinion.

Nos. 12 and 13. The same may be said of Nos. 12 and 13.

No. 14. Is correct and in accord with our holding, except that it goes further and states that "there is no statute in Ohio making such requirement", viz., for a permit. True, but it ignores the Sanitary Code and is therefore misleading when a verdict of acquittal is directed upon the premises of the charge.

Nos. 15, 16, 17. The subject matter is sufficiently discussed in the general opinion.

No. 18. Was not within the cognizance of the jury.

No. 20. Treats of the injunction which has been fully considered.

The judgment will be reversed in accordance with this decision, and judgment of dismissal of the charge entered at the costs of the plaintiff.

WISEMAN, P. J., and MILLER, J., concur.